**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| SUVEGA SRINIVASAN, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>COTY INC., SUE NABI, and LAURENT MERCIER,<br><br>Defendants. | Case No. 1:26-cv-02343<br><br>**COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS**<br><br>**CLASS ACTION**<br><br><u>Demand for Jury Trial</u> |

Plaintiff Suvega Srinivasan ("Plaintiff"), individually and on behalf of all other persons similarly situated, by his undersigned attorneys, alleges in this Complaint for violations of the federal securities laws (the "Complaint") the following based upon knowledge with respect to his own acts, and upon facts obtained through an investigation conducted by his counsel, which included, *inter alia*: (a) review and analysis of relevant filings made by Coty Inc. ("Coty" or the "Company") with the United States Securities and Exchange Commission (the "SEC"); (b) review and analysis of Coty's public documents, conference calls, press releases, and stock chart; (c) review and analysis of securities analysts' reports and advisories concerning the Company; and (d) information readily obtainable on the internet.

Plaintiff believes that further substantial evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery. Most of the facts supporting the allegations contained herein are known only to the defendants or are exclusively within their control.

**NATURE OF THE ACTION**

1.      This is a federal securities class action on behalf of all investors who purchased or otherwise acquired Coty common stock between November 5, 2025, to February 4, 2026, inclusive (the "Class Period"), seeking to recover damages caused by Defendants' violations of the federal securities. (the "Class").

2.      Defendants provided investors with material information concerning Coty's growth potential for the fiscal year 2026. Defendants' statements included, among other things, confidence in the Company's ability to drive growth and profitability in the fiscal year 2026 by improving fragrance sales, building a strong innovation pipeline and making operational improvements.

3.      Defendants provided these overwhelmingly positive statements to investors while, at the same time, disseminating materially false and misleading statements and/or concealing material adverse facts concerning the true state of Coty's slowing growth in the beauty market, notably, the Consumer Beauty market was underperforming, margins were compressed by increased marketing investments and there was slowing growth in its Prestige fragrance segment. Such statements absent these material facts caused Plaintiff and other shareholders to purchase Coty's securities at artificially inflated prices.

4.      After the market closed on February 4 and 5, 2026, Coty announced its financial results for the second quarter fiscal year 2026, unveiling disappointing earnings results with worsening performance in the Consumer Beauty segment. The Company also noted the recent transition of its Chief Executive Officer in conjunction with the below-expectation results. Coty further withdrew its fiscal year 2026 guidance for EBITDA and revised the Company's near-term outlook downward.  Coty attributed its results and lowered guidance to a combination of

2

macroeconomic factors including rising costs and uncertain consumer demand and lack of "operational discipline" in both Prestige and Consumer Beauty segments.

5.     Investors and analysts reacted immediately to Coty's revelation. The price of Coty's common stock declined from a closing market price of $3.43 per share on February 4, 2026, to $2.66 per share on February 6, 2026, a decline of about 22%.

## JURISDICTION AND VENUE

6.     Plaintiff brings this action, on behalf of himself and other similarly situated investors, to recover losses sustained in connection with Defendants' fraud.

7.     The claims asserted herein arise under and pursuant to §§10(b) and 20(a) of the Exchange Act (15 U.S.C. §§ 78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. §240.10b-5).

8.     This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§1331 and 1337, and Section 27 of the Exchange Act, 15 U.S.C. §78aa.

9.     Venue is proper in this District pursuant to §27 of the Exchange Act and 28 U.S.C. §1391(b), as Defendant Coty is headquartered in this District and a significant portion of its business, actions, and the subsequent damages to Plaintiff and the Class, took place within this District.

10.     In connection with the acts, conduct and other wrongs alleged in this Complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including but not limited to, the United States mail, interstate telephone communications and the facilities of the national securities exchange.

**THE PARTIES**

11.    Plaintiff purchased Coty common stock at artificially inflated prices during the Class Period and was damaged upon the revelation of the Defendants' fraud. Plaintiff's certification evidencing his transaction(s) in Coty is attached hereto.

12.    Coty Inc. is a Delaware corporation with its principal executive offices located at 350 Fifth Avenue, New York, NY 10118. During the Class Period, the Company's common stock traded on the New York Stock Exchange (the "NYSE") under the symbol "COTY."

13.    Defendant Sue Nabi ("Nabi") was, at all relevant times, the Chief Executive Officer and Director of Coty.

14.    Defendant Laurent Mercier ("Mercier") was, at all relevant times, the Chief Financial Officer of Coty.

15.    Defendants Nabi and Mercier are sometimes referred to herein as the "Individual Defendants." Coty together with the Individual Defendants are referred to herein as the "Defendants."

16.    The Individual Defendants, because of their positions with the Company, possessed the power and authority to control the contents of Coty's reports to the SEC, press releases, and presentations to securities analysts, money and portfolio managers, and institutional investors, *i.e.*, the market. Each Individual Defendant was provided with copies of the Company's reports and press releases alleged herein to be misleading prior to, or shortly after, their issuance and had the ability and opportunity to prevent their issuance or cause them to be corrected. Because of their positions and access to material non-public information available to them, each of these Individual Defendants knew that the adverse facts specified herein had not been disclosed to, and were being concealed from, the public, and that the positive representations which were being made were then

4

materially false and/or misleading. The Individual Defendants are liable for the false statements pleaded herein, as those statements were each "group-published" information, the result of the collective actions of the Individual Defendants.

17.    Coty is liable for the acts of the Individual Defendants, and its employees under the doctrine of respondeat superior and common law principles of agency as all the wrongful acts complained of herein were carried out within the scope of their employment with authorization.

18.    The scienter of the Individual Defendants, and other employees and agents of the Company are similarly imputed to Coty under respondeat superior and agency principles.

## SUBSTANTIVE ALLEGATIONS

### *Company Background*

19.    Coty together with its subsidiaries, manufactures, markets, distributes, and sells branded beauty products worldwide. It operates through two segments: the Prestige and Consumer Beauty. The company provides fragrance, color cosmetics, and skin and body care products through prestige retailers, including perfumeries, department stores, e-retailers, direct-to-consumer websites, and duty-free shops.

### *The Defendants Materially Misled Investors Concerning Coty's*

### *Profitability for Fiscal Year 2026*

### *November 5, 2025*

20.    On November 5, 2025, Defendants published their first quarter results for fiscal year 2026. The press release also provided Coty's expected fiscal year 2026 guidance, stating, in pertinent part:

> Consistent with its prior outlook, Coty expects a gradual improvement in sales trends over the course of FY26 from the 4Q25 LFL levels, when the Company actively intervened to clean up the baseline of the business. With strong sales delivery in the month of October, particularly in Prestige, Coty expects **Q2 LFL**

*sales to be at the more favorable end of prior guidance of a LFL decline of -3% to -5%, with sequential trend improvement in both Prestige and Consumer Beauty*. On the reported revenue side, Coty estimates a low-to-mid-single-digit percentage FX benefit in Q2. The Company continues to expect LFL sales to return to growth in 2H26, as sell-in and sell-out reach alignment, and supported by several key launches in Prestige, as well as more favorable comparisons.

*Coty continues to expect a gradual profit trend improvement, with adjusted EBITDA declining by a low-to-mid teens percentage in 2Q26, consistent with its prior guidance. The Company also expects to return to adjusted EBITDA growth in 2H26, targeting $1 billion in adjusted EBITDA in FY26.* While this outlook implies very strong year-over-year expansion in 2H26 adjusted EBITDA, this is primarily a function of prior year comparisons, with an implied low-single-digit growth in 2H26 adjusted EBITDA on a 2-year basis.

*        *        *

*The Company continues to expect seasonally strong free cash flow in 1H26 of over $350 million,* resulting in leverage at the end of CY25 approximately in line with the 4Q25 level of ~3.5x, reflecting the lower adjusted EBITDA and FX headwinds from the Euro-denominated debt. The Company remains fully focused on deleveraging over CY26 and beyond, targeting an investment grade profile, and is actively pursuing the monetization of Wella.

(Emphasis added).

21.     As part of the press release, Defendant Nabi, CEO of Coty, touted that business trends were improving and second quarter sales were tracking toward favorable end of guidance with the Company expecting a return to sales and profit growth in the second half of fiscal year 2026, stating, in pertinent part, as follows:

*Coty's strategic progress is accelerating as we elevate Coty as a Prestige beauty company with an emphasis on fragrances and scenting across price points, complemented by capabilities in prestige cosmetics and skincare.* In line with our recent strategic announcements, over the coming years we will concentrate investment behind our portfolio brands with the greatest long-term potential, while also building and elevating our newly added licenses and brands.

*        *        *

*Following recent changes, Coty's underlying business trends are already improving, in line to slightly ahead of our expectations, particularly in Prestige. In Q1, our U.S. Prestige fragrance sell-out grew by a mid-to-high single digit percentage, in line with the market, and we expect the U.S. Prestige business to return to both sales and sell-out growth in Q2.*

6

<p style="text-align:center">*       *       *</p>

*We see tremendous potential to accelerate this momentum, driven by a pipeline of new brand launches and innovations, market-leading e-commerce, and globally scaled brick & mortar presence.*

<p style="text-align:center">*       *       *</p>

As a result, we expect Q2 sales to be at the more favorable end of our previous guidance, with a return to sales and profit growth in the second half of FY26.

(Emphasis added).

22.    During the accompanying earnings call, Defendant Nabi highlighted the strategic transformations being made to the Consumer Beauty segment, new leadership appointments and AI implementation throughout its operations, stating, in pertinent part:

We've shown strong progress in improving our execution in U.S. Prestige with the U.S. being our #1 headwind in fiscal '25. *We are acting with urgency to transform our Consumer Beauty business while progressing with our strategic review. And we remain laser-focused on strengthening our profitability and balance sheet with our fiscal year '26 business trends steadily improving in line with our expectations.* As we solidify our position as a global prestige beauty company, with an emphasis on fragrance and scenting across price points with cosmetics and skin care capabilities, our goal remains delivering strong, consistent performance and outperforming the beauty market.

<p style="text-align:center">*       *       *</p>

One of our top priorities has been to address the challenges we face in the U.S. market, which accounted for the vast majority of our sales declines in '25. *In the spring, we announced the new regional structure to make Coty nimbler and more aligned with today's evolving channel landscape. We also appointed new leadership in the U.S., and we are now benefiting from a seasoned leadership team and an overarching regional structure that adds another layer of experience and agility.* These adjustments are yielding positive green shoots as we close the gap between our U.S. prestige fragrance sellout and the overall U.S. prestige fragrance market from an approximately 5-point gap in Q4 '25 to full alignment with the market in Q1 of fiscal '26.

<p style="text-align:center">*       *       *</p>

*With our solid sell-out growth in the last 2 quarters and assuming the Prestige fragrance market continues to grow at a similar pace, we expect our U.S. Prestige sell-in to return to growth in Q2. These results demonstrate Coty's agility and commitment to returning to outperformance in our largest market.* We have taken decisive steps to fundamentally improve Coty's ROI and operational efficiency.

<p style="text-align:center">7</p>

The next phase of All-In To Win is underway, targeting significant fixed cost savings across the organization. ***Our newly established performance and operational excellence office is reinforcing operational oversight focused on consistent performance tracking and improving ROI.***

\* \* \*

***As shared last quarter, we are accelerating AI implementation across Coty with a new road map to embed digital innovation throughout our operations. A few priorities include content automation with Agentic AI, smarter decisions through predictive analytics and visualization and better user experiences through chatbots, plus new AI assistance in procurement, for instance, which are transforming contracts and negotiations.*** And with the rise of Agentic shopping across retail platforms, we are already developing and integrating tools to enhance the shopper experience, including selection optimization and virtual try-ons. ***These initiatives are optimizing fixed cost investments across back-end functions and reducing the cost of content creation, freeing up funds for working media. We're already seeing some early benefits and expect them to ramp up over the coming years.***

(Emphasis added).

23.    On the same call, Defendant Mercier then provided outlook for the second half of 2026 and touted Coty's return to growth in both Prestige and Consumer Beauty, stating, in relevant part:

***Importantly, we anticipate net revenues will turn positive in the second half, supported by new launches, alignment between sell-in and sell-out and easing comparison.*** Lower sales, a net negative impact from tariffs and the anticipated restoration of variable compensation are weighing on EBITDA in the first half. ***However, we expect positive EBITDA in the second half, supported by a return to sales growth, stepped-up contribution from tariff mitigation and the full benefit of our fixed cost savings initiatives.***

***Let me share more concrete guidance for Q2. We continue to expect a gradual improvement in sales trends through fiscal year '26 from the Q4 '25 like-for-like levels.*** With strong sales in October, particularly in Prestige, we expect Q2 like-for-like sales to land at the more favorable end of our prior guidance of minus 3% to minus 5% like-for-like with sequential trend improvement in both Prestige and Consumer Beauty. We estimate a low to mid-single-digit ForEx benefit on our reported revenues in Q2.

\* \* \*

***Turning now to our outlook for the second half. We continue to expect our like-for-like sales to return to growth in the second half as sell-in and sell-out reach***

*alignment and supported by several key launches in Prestige as well as more favorable comparisons. We also expect to return to adjusted EBITDA growth in the second half, targeting around $1 billion in adjusted EBITDA for the year.* While this outlook implies very strong year-over-year expansion in our second half EBITDA, it is important to remind that this is off very low prior year comparisons, particularly in Q4 '25.

*On a 2-year basis, our EBITDA outlook for second half fiscal year '26 is a few percentage points higher than second half of fiscal year '24.* The expected profit growth will, in turn, fuel adjusted EPS growth in the second half. Our goal is also to continue deleveraging in calendar year '26 as we target reaching an investment-grade profile.

(Emphasis added).

24.     During the question-and-answer segment of the earnings call held on November 6, 2025, Defendant Nabi addressed multiple questions surrounding their projections for the second quarter and confidence in the Prestige fragrance market's growth acceleration in the following pertinent exchanges:

<Q: Filippo Falorni – Citigroup Inc. – Equity Research Analyst> Sue, maybe can you comment a bit about the better performance that you're seeing in fiscal Q2 that is driving you to the higher end of the range? Are you seeing an acceleration in some category growth?

<A: Sue Y. Nabi > *So on the first question regarding the better performance that we are contemplating for Q2, which led to our increase in terms of being at the more favorable part of the guidance for Q2. I would say that it's a mix of everything, in fact, the dynamism of the fragrance market in the U.S. continues to be very strong. Again, we are talking about a market that's in the mid-single-digit growth. And what we see in Q2 in terms of market dynamics is confirming this element.* So we believe it's going to be a good holiday season. this is number one. *Number two, our innovations, specifically the BOSS Bottled Beyond launch that started at the end of the Q1, more or less, and it was exclusive to Travel Retail during this summer until the end of August.* So it all started in domestic markets around the end of September. This is such a big success that I believe it's going to translate into a stronger selling also for Q2.

\*     \*     \*

*Number three, I think the dynamism is also at the entry part of the market, which is around the entry prestige brands, but moreover around the Mist.* The Mist today are representing more or less 2% of Q1 net revenues in fragrances, which is big, I have to say. We have become the #3 or #4 player in Europe, #1 in Italy, to take a few examples. Everywhere or every brand that launched its own mist is seeing a

9

very strong halo effect on the base business, be it Kylie, be it philosophy or Calvin Klein that are the first to go to market, and there are other brands arriving soon.

\*　　\*　　\*

*The way we have built the mist is, number one, to make them fully additional, and this is really confirmed. It's really incremental sales for the company, attracting consumers, which are the youngest part of the Gen Z target, which are not usually buying into traditional fragrances to that level.* So this is one. And two, it's a gross margin that is in line with the one of our prestige fragrances. So there is absolutely no dilution in the way we have crafted and created this new category. So in a way, this Q2 better-than-expected outlook is driven by our ability, and I guess we are the only company doing this to play high low, while at the same time, securing the heart of our business, which are premium fragrances.

. . .

<Q: Oliver Chen – TD Cowen – Equity Research Analyst> Laurent, as we are excited about the second half here, what are your thoughts in terms of the key launches and how you'll think about categories and the comparisons as well that will give that return to that growth in the second half. Also, as you think about Consumer Beauty in Brazil, I would love your thoughts there on potential outlines and outcomes and time lines.

<A: Sue Y. Nabi> *So indeed, about H2, and indeed, we are confirming that we will be back to growth in the second half of this fiscal. So that's the #1 message. So what is behind this number is that indeed, the continuing momentum on the beauty category and especially of the Prestige fragrance category. So we see really consistent, resilient growth of this category.*

\*　　\*　　\*

And indeed, all the work that the new management team is putting in place in the U.S. is really confirming that this trend is going to continue and amplify in the H2. So that's very important category and the U.S., which, as you remember, was the main issue that we had a year ago.

*Now we are really already in a good place that we are recovering very fast. So that's really the big element. It's going to be amplified by strong innovation.* So as you heard and as you saw, I mean, BOSS Beyond Bottled is off a very good start. And of course, it's going to continue and amplify. And we are coming also in the second half with an additional blockbuster. *So again, the fundamentals of this growth are here. And the last element, which I want to highlight, which is very important is that indeed, at the end of this calendar '25, we are seeing that our sell-out performance will converge with the sell-in performance. So indeed, we are seeing already this quarter and we continue next quarter that the level of inventory with retailers is declining significantly.*

And indeed that we can really be back to really a well synchronized sell-out and selling. So these are really all the drivers, the key drivers confirming indeed having

our H2 back to growth and of course, to continue on this growth trajectory. So indeed, that's really on the H2. So indeed, on Consumer Beauty or Cosmetics, again, I mean, we announced and we made very clear that indeed now is really led by Gordon Von Bretten, who, as you know, I mean, knows very well the company. I mean he was Head of Transformation a few years ago. And Gordon is really currently assessing and really reviewing the full potential of this division, working on all components. So the #1 mandate, of course, is really to rejuvenate really the P&L, I mean, the profit and the cash generation from Color Cosmetics. And I can tell you that Gordon is already full speed, really built already a strong team really to manage all these key initiatives.

***And I can tell you it's covering the full spectrum, again of the P&L, starting, of course, with top line, gross to net, gross margin, A&CP allocation and of course, the fixed cost. So it's really in motion, and we will keep you posted, of course, on the progress on this journey.***

And second, which is on Brazil. As you know, Brazil is a very -- is a profitable business. I mean, really the work done over the last years really has brought very, very good results. And indeed, I mean, conclusions on Brazil are likely to come before than on Consumer Beauty and on color cosmetic business.
. . .

<Q: Sydney A. Wagner – Jefferies LLC – Equity Associate> Can you talk a little bit more about what you're seeing in terms of promotion and how that maybe varies by region or channel?

<A: Laurent Mercier> ***So indeed, on your question about brick-and-mortar and e-commerce, just to zoom out a little, yes, of course, I mean, e-commerce is growing very fast.*** And you know that now it's more than $1 billion net revenue for total Coty Link, and it's growing fast. In the Q1, we are seeing, I mean, the sellout of our e-commerce on both divisions is 5% to 6%. So indeed, we are really taking full opportunity of these channels.

<center>*     *     *</center>

***So indeed, you have, I would say, I call it more a mix effect from between e-comm and brick-and-mortar. So that's a fact, but it's not material. The other element is also that it's putting pressure on the brick-and-mortar retailers. And as a result, they are also becoming more disciplined and strict on their inventory management.***

<center>*     *     *</center>

And again, all the innovation that we are bringing, I mean, BOSS Beyond Bottled is the #2 male initiative in Europe. It's #1 in volume in Germany. And we are only at the beginning. So it's going to continue and amplify in the Q2. So you will see really the sellout in EMEA continue to increase. At the same time, same as the U.S., yes, we are still facing, and we will close by end of calendar. Indeed, from a selling

standpoint, facing the retailer destocking. And for example, Douglas made public that they are focusing on inventory reduction.

<A: Sue Y. Nabi> Again, what we can say is that the Prestige fragrance market grew by 5% during the quarter globally. which is a little slower than months ago, but it's ahead of many other consumer categories, including color cosmetics. *In the U.S., the market remains very strong, as I said it before, 7% of growth in the quarter. And very importantly, this is to answer your question. This includes low single-digit volume growth since the category continues to gain users and additional usage occasions.*

\* \* \*

*Coty has posted 15% sell-out growth in the market to be compared to a market that was around 7% of growth, which is a good growth. And this was driven by our skin care business.*

\* \* \*

*The other part, which is the biggest part of our business, it's 70% of our business, it's fragrances. And there, the market is back to growth, and we are growing 2x faster than the market.* So your question is what is needed to compete on this market? Exactly the brands we have at Coty, in fact. There, it's not a question of high, low. *It's all about high, high, high, high. And the higher you go, the better it is. And again, I've been describing at length the very comprehensive portfolio of ultra-premium brands that we have today in our hands.*

Again, Atelier des Fleurs which is phenomenously doing well in Asia, Burberry Signature, BOSS Collection, Jil Sander Signature, Marni and Etro upcoming collection, Infiniment Coty Paris, and I'm sure I forgot 1 or 2, but this is really a portfolio that will allow us to play in this area like never before to reach here not 20% of the market, but likely 40% to 50% of the Chinese market are ultra-premium brands. *So there, there is really a big game to be played with a very, very profitable business to build.*

. . .

<Q: Anna Jeanne Lizzul – Bank of America Securities – Research Analyst> And then on the mass beauty side, I just wanted to follow up on the comment regarding the rapid channel shift. If you could elaborate on where you're seeing buyers gravitate in mass beauty and how it's impacting your business?

<A: Laurent Mercier> *Yes. I mean, just to confirm again, and we shared with you a few numbers. I mean, we are very confident, again, about the prestige fragrance performance and category.* Again, you know the numbers. I mean it has been very resilient for many years, many quarters. The fragrance index that we talked a lot about, I mean, is fully at play. So we are expecting a similar trend for Q1, also amplified by very powerful innovation and BOSS Beyond Bottled is one of them. *We are seeing Gen Z being very excited by the category. And again, back to the previous point, what's very healthy is $5 to $500, where we are seeing the high premium category growing double digit.*

(Emphasis added).

25. The above statements in Paragraphs 20 to 24 were false and/or materially misleading. Defendants created the false impression that they possessed reliable information pertaining to the Company's projected growth outlook for the second half of 2026 through new product launches and brand innovation, operational fixes in the Consumer Beauty segment and AI implementation throughout its operations while also minimizing risks from slowing growth in the beauty market. In truth, Coty's Consumer Beauty segment was underperforming, margins were compressed by increased marketing investments and there was slowing growth in the Prestige fragrance market.

### *The Truth Emerges*

#### *February 4, 2026*

26. On February 4, 2026, after market close, Defendants released prepared remarks for Coty's second quarter earnings for fiscal 2026. In pertinent part, Strobel said as follows:

> But as I say, if you're so smart, why aren't you rich? There is no denying that Coty's financial results in the past 18 months have been disappointing. The stock has also been hovering around at $3 for several months, which I see as a signal that investors are skeptical about Coty's long-term ability to compete in beauty, sustain fair market share and deliver consistent profitable growth. Both things are true. Coty has outstanding assets and capabilities, but we have not been delivering at the level that we should.

> My takeaway is simple. Our business imperative is to leverage our collective brain power and competitive advantage to deliver the financial and operational performance that reflects Coty's potential. Coty has breadth. Breadth can be a strength, but only when it is curated. This is the foundation of our new strategic framework, Coty. Curated. At its core, this means focused investment and sharper priorities. Coty. Curated. is about making big even bigger, scaling what wins, stopping what dilutes and removing layers that slow execution. Ultimately, success hinges on disciplined execution, operational effectiveness and sufficient multiyear marketing support.

> . . .

So how do we break this cycle? We will place a much stronger focus on our top markets, brands and initiatives, ensuring they are sufficiently funded and grow year after year. We will refocus investment on the core, ensuring that the more supports the core through built-in halo effects. These insights are not revolutionary, but they are fundamental to every beauty and consumer business that delivers long-term success. Fewer assets, better execution, bigger propositions and more supporting the core. We will share more details about Coty. Curated. in the coming quarters.

. . .

And third, our performance versus the market has been inconsistent. In Prestige fragrances, after lagging the market by 5% to 7% in prior quarters, our fiscal Q1 sell-out was in line with the market. However, in Q2, our sell-out was flattish, underperforming the market by several points in the critical fragrance category. In Consumer Beauty, we continue to see a large gap in our sell-out performance relative to U.S. mass cosmetics category, though the recent changes we implemented are starting to show some modest improvement.

27.    In pertinent part, Defendant Mercier added as follows:

Next steps in the coming months include reinvesting behind key icons, activating evolved brand equities, leveraging AI to scale content creation at a fraction of the cost and reexamining the full value chain. It is worth noting that some of these actions were part of our Consumer Beauty turnaround 5 years ago, including revamping brand equities, platforming innovation and streamlining SKU count.

While these interventions helped stabilize and grow Consumer Beauty several years ago, operational discipline has slipped across the organization over the past 2 years. For example, the number of SKUs in our annual CoverGirl innovation bundle has almost doubled in recent years, significantly increasing cost. We have already materially reduced the SKU count in the fiscal year '26 spring innovation bundle to focus on the highest potential launches. And our fiscal year '27 plans include further streamlining in the CoverGirl innovation SKU count. With Gordon leading end-to-end, the goal is to reinstate the operational discipline and introduce more transformational full value chain change so that progress is durable.

. . .

Now let me discuss our near-term outlook. With Markus new to Coty and only 1 month into the role, he needs time to fully immerse himself in the business, understand the underlying dynamics, refine our strategic priorities and align with the Board. Given this leadership transition, it will be premature to issue full second half of fiscal year 2026 guidance at this stage. ***As a result, we are withdrawing full fiscal year guidance which had been previously given for EBITDA and free cash flow***.

(Emphasis added.)

28.     Defendants' statements during the February 4, 2026 earnings call are in direct contrast to statements they made during the November 5 and November 6, 2025 earnings and shareholders calls. Defendants continually touted the Company's Prestige fragrance business, operational improvements in its Consumer Beauty segment and AI implementations throughout its operations, while minimizing risks from slowing growth in the beauty market.

29.     Investors and analysts reacted immediately to Coty's prepared remarks. The price of Coty's common stock declined from a closing market price of $3.43 per share on February 4, 2026 to $3.15 per share on February 5, 2026, a decline of about 8%.

*February 5, 2026*

30.     On February 5, 2026, Defendants published their second quarter and fiscal year 2026 results that were below expectations due to execution issues in the U.S. Prestige fragrance market and weaker performance in the Consumer beauty segment. Accordingly, management withdrew its fiscal year 2026 guidance for EBITDA and revised the Company's near-term outlook downward, in pertinent part:

**Six Months Ended December 31, 2025, Summary Results**

For the six months ended December 31, 2025, compared to the six months ended December 31, 2024:

- Net revenue of $3,255.8 million decreased 3% and included a 3% benefit from FX. On a LFL basis, net revenue decreased 6%.
- Reported gross margin of 64.1% decreased 200 basis points year-over-year.
- Adjusted gross margin of 64.3% decreased 180 basis points year-over-year.
- Reported operating income of $333.2 million declined from reported operating income of $506.0 million in the prior year, resulting in a reported operating margin of 10.2%.
- Adjusted operating income of $514.8 million declined 19%. The adjusted operating margin of 15.8%, reflected a 330 basis point decline.
- Adjusted EPS of $0.26 was flat year-over-year, and included a negative impact from the equity swap mark-to-market of $0.07.

15

- Adjusted EBITDA of $626.3 million decreased 17% year-over-year. The adjusted EBITDA margin of 19.2% reflected a 330 basis point decline.

. . .

**Outlook**

Given the complex beauty market backdrop and Coty's leadership transition, the Company is withdrawing its prior FY26 guidance for EBITDA and free cash flow, and is providing guidance solely for Q3.

Coty expects LFL Q3 revenues to decline by a mid-single-digit percentage, primarily due to weakening in Consumer Beauty sales trends.

\*       \*       \*

Coty anticipates Q3 gross margins to decline by 200 to 300 basis points year-on-year, consistent with Q2 trends. Factoring this gross margin decline, a sizable mechanical impact to fixed costs from the reversal of variable compensation expense, and the Company's commitment to protect A&CP to reignite market share improvement, Coty estimates Q3 adjusted EBITDA of $100 million to $110 million, translating to approximately breakeven adjusted EPS excluding the equity swap.

31.     The press release also acknowledged the recent appointment of Markus Strobel as Executive Chairman of the Board and Interim CEO of Coty. As part of the release, now Interim CEO Strobel commented on Coty's disappointing performance and new strategies to improve execution and strengthen the core business, stating, in relevant part:

> In my first month in the role, having visited our largest markets and key sites, it's very clear to me that Coty has many top-notch assets and competitive advantages: highly attractive brands, best-in-class fragrance innovation capabilities, a vertically integrated business model, and a creative, entrepreneurial organization.
>
> *At the same time, our financial performance over the past year and a half has been disappointing, and our current share price reflects that reality. Both things are true: Coty has outstanding assets and capabilities, yet we have not been delivering at the level we should.*
>
> *To step-change our performance and channel our strengths, we are initiating our "Coty. Curated." strategic framework, encompassing sharper priorities, more focused investments, improved execution, and increased support behind our core businesses.* These actions are anchored in consumer demand and a relentless focus on sell-out and market share.

16

In parallel, we are continuing our portfolio review to identify opportunities to unlock shareholder value in both the near and long term, complemented by other value-driving opportunities, such as our recent divestiture of our remaining stake in Wella at the end of CY25, delivering on our commitment.

With greater focus and discipline, I believe Coty is well positioned to deliver consistent, profitable growth and realize its full potential.

(Emphasis added).

32.     During the earnings call, Interim CEO Strobel highlighted Coty's disappointment with declining growth in the Consumer Beauty and Prestige fragrances segments and detailed the new strategic framework for the Company, stating, in pertinent part:

There is no denying that Coty's financial results in the past 18 months have been disappointing. The stock has also been hovering around at $3 for several months, which I see as a signal that investors are skeptical about Coty's long-term ability to compete in beauty, sustain fair market share and deliver consistent profitable growth. Both things are true. ***Coty has outstanding assets and capabilities, but we have not been delivering at the level that we should.***

My takeaway is simple. Our business imperative is to leverage our collective brain power and competitive advantage to deliver the financial and operational performance that reflects Coty's potential. Coty has breadth. Breadth can be a strength, but only when it is curated. This is the foundation of our new strategic framework, Coty. Curated. ***At its core, this means focused investment and sharper priorities. Coty. Curated. is about making big even bigger, scaling what wins, stopping what dilutes and removing layers that slow execution. Ultimately, success hinges on disciplined execution, operational effectiveness and sufficient multiyear marketing support.***

\*      \*      \*

So how do we break this cycle? ***We will place a much stronger focus on our top markets, brands and initiatives, ensuring they are sufficiently funded and grow year after year. We will refocus investment on the core, ensuring that the more supports the core through built-in halo effects.*** These insights are not revolutionary, but they are fundamental to every beauty and consumer business that delivers long-term success. Fewer assets, better execution, bigger propositions and more supporting the core.

\*      \*      \*

17

*And third, our performance versus the market has been inconsistent. In Prestige fragrances, after lagging the market by 5% to 7% in prior quarters, our fiscal Q1 sell-out was in line with the market. However, in Q2, our sell-out was flattish, underperforming the market by several points in the critical fragrance category.* In Consumer Beauty, we continue to see a large gap in our sell-out performance relative to U.S. mass cosmetics category, though the recent changes we implemented are starting to show some modest improvement.

(Emphasis added).

33.    During the question-and-answer segment, Defendant Mercier and Interim CEO Strobel stressed Coty's inability to execute well enough on core brands and markets, in pertinent part:

<Q: Filippo Falorni – Citigroup Inc. – Equity Research Analyst> Laurent, on the margin side, Consumer Beauty has been significantly below corporate average. Do you have an aspiration of what their business operating margins can get back to?

<A: Laurent Mercier> *I mean you heard really from Markus that, number one, there is a clear diagnosis on where we have the gaps and the work that Gordon and the team initiated that in front of each gap, okay, there is a clear action plan.* So now, of course, it takes some time really to implement these actions. Markus was giving the example of innovation. So the team really has designed really a detailed innovation plan, but this is going to pay off in fiscal '27, okay?

But on top of this is, of course, reignite the sellout and then volumes will also reverse the gross margin trend because currently in the gap, there is some fixed cost under absorption. So we have really these elements. *A lot of work done really on platforming across all our great brands. A&CP, detailed work, really how to optimize A&CP. And of course, there is another work on SG&A optimization.* So I'm not going to give you a precise number, but I can tell you that all these initiatives really under high scrutiny, and you will start to see really some improvement in fiscal '27, which will be part of the profit recovery for the global company.
. . .

<Q: Olivia Tong Cheang – Raymond James & Associates – Research Analyst> Markus, I was wondering if you could give some views on your assessment of the internal controls of the company and sort of prioritization, what's your starting point? Because is it the brand, the marketing, innovation, SKU management, IT, it sounds like it's all of the above. So do you think this is a company in need of significant reinvestment? Are there costs that you can take out? And I guess, most importantly, do you trust the answers that the analytics are providing?

&lt;A: Markus Strobel&gt; *What we are missing a bit is the operational discipline to bring this to market in a way that is sequenced, that is properly funded and that is well thought through in agreements return in the plans we go to market.*

\*     \*     \*

*It's very hard to do, to change the mindset of the organization on this one and put the processes in and the data and the analytics. That's where we spend a lot of time these days, how do we get to one source of truth and every aspect about our business.* So when we talk about service to customers, what is the one number that tells us, are we meeting service to customers? What is the one number that tells us are we meeting offtake and market share expectations? So we spend a lot of time in, at the moment, data and AI to really build out our data lake to make sure we have the right questions, the right answers, the right hypothesis and come up, come up with the right action. So you're right, there's a lot of investment needed in this space, and we're making these investments.

. . .

&lt;Q: Charles-Louis Scotti – Kepler Cheureux, Research Division – Head of Luxury Goods&gt; The first one, could you please provide us more granularity on the expected mid-single-digit sales decline in Q3? It appears that the Consumer Beauty will remain the main drag, but Prestige Beauty comps become significantly easier in Q3 and apparently, inventories are healthier. And despite that, it seems that there will be a sequential deterioration in Q3. So what's explaining this dynamic? And more broadly, what's driving the gap between consumer and your own expected top line growth? Is it destocking or market share losses?

&lt;A: Laurent Mercier&gt; So indeed, on the Q3, mid-single digits. *So as we indicated, I mean, it's -- the main headwind is from Consumer Beauty. And indeed, as we shared just before, I mean, we are really still in a phase of that we know where the gaps are. The team is really putting in place all these actions, but it takes time.* And indeed, we are still in this phase where the example that too many innovations, then we had to take some returns in some cases. So it's still hurting the top line, and this is something that indeed we are managing.

\*     \*     \*

So there are also some parts where we are deprioritizing, okay? So it may -- it's weighing on the net revenue, but for good reasons, okay, it's really with this approach that it will pick up and then it will improve the gross margin and it will improve the profitability. *So there is the dimension that you need to consider in Q3 for Consumer Beauty. But at the same time, we are starting to see some green shoots. Markus was referring to CoverGirl, Simply Ageless, Lash Blast, I mean, are doing good.* So we need really to amplify these initiatives. But again, it takes time.

. . .

19

<Q: Oliver Chen – TD Cowen – Equity Research Analyst > On the Consumer Beauty side, given the strategy edits here, should we expect it to get worse and worse before it gets better just in order to conduct that reset? And also, as you think about Consumer Beauty, what specific innovation are you most -- feeling most confident about that we should focus on?

<A: Markus Strobel> *On Consumer Beauty, I think I would not -- I think things will get better. This quarter for us is difficult as we are really changing the way the go-to-market, sharper bundles, better focus on the base business.* It will take some time, but I would not characterize this going -- getting from worse to worse. It will not be easy. It will take some time, but it will get better. I'm pretty much convinced of this. I've seen the plans.

I have seen the way the team is defining the activities of the brand to both appeal to a modern consumer, but also make sure that our heritage consumer is being protected and keeps loving our brands. So I'm very excited about that. We have good innovation coming up. We have strong innovation coming up on our core franchises, on the Simply Ageless, on the Lash Blast, but also on new items, more trend items like skin tints and all these things that are currently being requested by the market. So we're on it. So I guess the bundle that we're going to bring out the fiscal '26 bundle is going to be good, much better than before. The fiscal '27 bundle will be great.

(Emphasis added).

34.    The aforementioned press releases and statements made by the Individual Defendants are in direct contrast to statements they made during the November 5 and November 6, 2025 earnings and shareholders calls. On those calls, Defendants continually touted the Company's Prestige fragrance business, operational improvements in its Consumer Beauty segment and AI implementations throughout its operations, while minimizing risks from slowing growth in the beauty market.

35.    Investors and analysts reacted immediately to Coty's revelation. The price of Coty's common stock declined from a closing market price of $3.15 per share on February 5, 2026 to $2.66 per share on February 6, 2026, a decline of about 16%.

36.    A number of well-known analysts who had been following Coty lowered their price targets in response to Coty's disclosures. For example, Citigroup dropped their price target noting

20

that, "[w]hile we think COTY has derisked F3Q26, we believe the outlook into F4Q26 and FY27 remains highly uncertain…There is limited visibility into outstanding questions about the magnitude of the likely necessary business reinvestments and the timeline for operational changes to show up in the P&L."

37.    Similarly, RBC Capital Markets lowered the firm's price target to $10 from $8, noting "the company is feeling gravity of the current macro realities given performance in FY25/YTD FY'26, indicating that the company is not immune from broad category pressure…However, COTY misjudged innovation timing and made the choices to clean up trade inventories, which has added to underwhelming results into FY'26 thus far."

38.    J.P. Morgan maintained its neutral rating commenting, "CEO Strobel's sense of urgency around stabilizing the business came as no surprise, but this arduous task is juxtaposed against a challenging operating environment characterized by underlying category deceleration…heightened levels of promotion and continued need to invest in A&CP."

39.    The fact that these analysts, and others discussed Coty's shortfall and below-expectation projections suggests the public placed significant weight on Coty's sales and profit growth across its Consumer Beauty and Prestige segments. The frequent, in-depth discussion of Coty's guidance confirms that Defendants' statements during the Class Period were material.

*Additional Scienter Allegations*

40.    During the Class Period, Defendants acted with scienter in that they knew, should have known, or otherwise were deliberately reckless in not knowing that the public statements disseminated on behalf of Coty were materially false and misleading at the time they were made. Defendants had actual knowledge of, or access to, non-public information concerning the

Company's slowing growth in the beauty market, operational inefficiencies, and decelerating growth in the Prestige fragrance segment.

41.    Notwithstanding such, Defendants repeatedly and affirmatively represented to investors that Coty was well positioned to implement and capitalize upon its growth initiatives to reach fiscal year 2026 guidance target. Defendants further repeatedly claimed that operational improvements in U.S. Prestige fragrance and Consumer Beauty, combined with a strong innovation pipeline and strategic integration of its brands, would drive revenue growth, margin expansion, and overall profitability in the U.S. and abroad.

42.    Defendants' scienter was further evidenced by their repeated claims of confidence that Coty would sustain its growth trajectory and achieve its stated fiscal year 2026 guidance, including assurances that consumer demand trends, expansion rates and company performance remained strong, despite ultimately disclosing weaker than expected earnings and withdrawing its fiscal year 2026 guidance immediately following the replacement of its then-CEO, Defendant Nabi, who had only been serving as CEO for five years at the time.

### *Loss Causation and Economic Loss*

43.    During the Class Period, as detailed herein, Defendants made materially false and misleading statements and engaged in a scheme to deceive the market and a course of conduct that artificially inflated the price of Coty's common stock and operated as a fraud or deceit on Class Period purchasers of Coty's common stock by materially misleading the investing public. Later, Defendants' prior misrepresentations and fraudulent conduct became apparent to the market, the price of Coty's common stock materially declined, as the prior artificial inflation came out of the price over time. As a result of their purchases of Coty's common stock during the Class Period,

Plaintiff and other members of the Class suffered economic loss, *i.e.*, damages under federal securities laws.

44.    Coty's stock price fell in response to the corrective events on February 4 and 5, 2026, as alleged *supra*. On February 4 and 5, 2025, Defendants disclosed information that was directly related to their prior misrepresentations and material omissions concerning Coty's forecasting processes and growth guidance.

45.    In particular, on February 4 and 5, 2026, Coty announced results for the second quarter and fiscal year 2026 results below expectations and further withdrew its fiscal year 2026 guidance for EBITDA.

### *Presumption of Reliance; Fraud-On-The-Market*

46.    At all relevant times, the market for Coty's common stock was an efficient market for the following reasons, among others:

(a)    Coty's common stock met the requirements for listing and was listed and actively traded on the NYSE during the Class Period, a highly efficient and automated market;

(b)    Coty communicated with public investors via established market communication mechanisms, including disseminations of press releases on the national circuits of major newswire services and other wide-ranging public disclosures, such as communications with the financial press and other similar reporting services;

(c)    Coty was followed by several securities analysts employed by major brokerage firms who wrote reports that were distributed to the sales force and certain customers of their respective brokerage firms during the Class Period. Each of these reports was publicly available and entered the public marketplace; and

23

(d)    Unexpected material news about Coty was reflected in and incorporated into the Company's stock price during the Class Period.

47.    As a result of the foregoing, the market for Coty's common stock promptly digested current information regarding the Company from all publicly available sources and reflected such information in Coty's stock price. Under these circumstances, all purchasers of Coty's common stock during the Class Period suffered similar injury through their purchase of Coty's common stock at artificially inflated prices, and a presumption of reliance applies.

48.    Alternatively, reliance need not be proven in this action because the action involves omissions and deficient disclosures. Positive proof of reliance is not a prerequisite to recovery pursuant to ruling of the United States Supreme Court in *Affiliated Ute Citizens of Utah v. United States*, 406 U.S. 128 (1972). All that is necessary is that the facts withheld be material in the sense that a reasonable investor might have considered the omitted information important in deciding whether to buy or sell the subject security.

### *No Safe Harbor; Inapplicability of Bespeaks Caution Doctrine*

49.    The statutory safe harbor provided for forward-looking statements under certain circumstances does not apply to any of the material misrepresentations and omissions alleged in this Complaint. As alleged above, Defendants' liability stems from the fact that they provided investors with revenue projections while at the same time failing to maintain adequate forecasting processes. Defendants provided the public with forecasts that failed to account for this decline in sales and/or adequately disclose the fact that the Company at the current time did not have adequate forecasting processes.

50.    To the extent certain of the statements alleged to be misleading or inaccurate may be characterized as forward looking, they were not identified as "forward-looking statements"

24

when made and there were no meaningful cautionary statements identifying important factors that could cause actual results to differ materially from those in the purportedly forward-looking statements.

51.     Defendants are also liable for any false or misleading "forward-looking statements" pleaded because, at the time each "forward-looking statement" was made, the speaker knew the "forward-looking statement" was false or misleading and the "forward-looking statement" was authorized and/or approved by an executive officer of Coty who knew that the "forward-looking statement" was false. Alternatively, none of the historic or present-tense statements made by Defendants were assumptions underlying or relating to any plan, projection, or statement of future economic performance, as they were not stated to be such assumptions underlying or relating to any projection or statement of future economic performance when made, nor were any of the projections or forecasts made by the defendants expressly related to or stated to be dependent on those historic or present-tense statements when made.

## CLASS ACTION ALLEGATIONS

52.     Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a Class, consisting of all those who purchased or otherwise acquired Coty's common stock during the Class Period (the "Class"); and were damaged upon the revelation of the alleged corrective disclosure. Excluded from the Class are defendants herein, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which defendants have or had a controlling interest.

53.     The members of the Class are so numerous that joinder of all members is impracticable. Throughout the Class Period, Coty's common stock were actively traded on the

25

NYSE. While the exact number of Class members is unknown to Plaintiff at this time and can be ascertained only through appropriate discovery, Plaintiff believes that there are hundreds or thousands of members in the proposed Class. Record owners and other members of the Class may be identified from records maintained by Coty or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions. As of August 12, 2025, there were 872 million shares of the Company's Class A common stock outstanding. Upon information and belief, these shares are held by thousands, if not millions, of individuals located throughout the country and possibly the world. Joinder would be highly impracticable.

54.     Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

55.     Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation. Plaintiff has no interests antagonistic to or in conflict with those of the Class.

56.     Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

(a)     whether the federal securities laws were violated by Defendants' acts as alleged herein;

(b)     whether statements made by Defendants to the investing public during the Class Period misrepresented material facts about the business, operations and management of Coty;

26

(c)     whether the Individual Defendants caused Coty to issue false and misleading financial statements during the Class Period;

(d)     whether Defendants acted knowingly or recklessly in issuing false and misleading financial statements;

(e)     whether the prices of Coty's common stock during the Class Period were artificially inflated because of the Defendants' conduct complained of herein; and

(f)     whether the members of the Class have sustained damages and, if so, what is the proper measure of damages.

57.     A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them. There will be no difficulty in the management of this action as a class action.

## COUNT I

### *Against All Defendants for Violations of*

### *Section 10(b) and Rule 10b-5 Promulgated Thereunder*

58.     Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

59.     This Count is asserted against defendants and is based upon Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder by the SEC.

60.     During the Class Period, Defendants engaged in a plan, scheme, conspiracy and course of conduct, pursuant to which they knowingly or recklessly engaged in acts, transactions, practices and courses of business which operated as a fraud and deceit upon. Plaintiff and the other

members of the Class; made various untrue statements of material facts and omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and employed devices, schemes and artifices to defraud in connection with the purchase and sale of securities. Such scheme was intended to, and, throughout the Class Period, did: (i) deceive the investing public, including Plaintiff and other Class members, as alleged herein; (ii) artificially inflate and maintain the market price of Coty common stock; and (iii) cause Plaintiff and other members of the Class to purchase or otherwise acquire Coty's securities at artificially inflated prices. In furtherance of this unlawful scheme, plan and course of conduct, Defendants, and each of them, took the actions set forth herein.

61. Pursuant to the above plan, scheme, conspiracy and course of conduct, each of the defendants participated directly or indirectly in the preparation and/or issuance of the quarterly and annual reports, SEC filings, press releases and other statements and documents described above, including statements made to securities analysts and the media that were designed to influence the market for Coty's securities. Such reports, filings, releases and statements were materially false and misleading in that they failed to disclose material adverse information and misrepresented the truth about the Company.

62. By virtue of their positions at the Company, Defendants had actual knowledge of the materially false and misleading statements and material omissions alleged herein and intended thereby to deceive Plaintiff and the other members of the Class, or, in the alternative, Defendants acted with reckless disregard for the truth in that they failed or refused to ascertain and disclose such facts as would reveal the materially false and misleading nature of the statements made, although such facts were readily available to Defendants. Said acts and omissions of defendants were committed willfully or with reckless disregard for the truth. In addition, each defendant knew

or recklessly disregarded that material facts were being misrepresented or omitted as described above.

63.     Information showing that Defendants acted knowingly or with reckless disregard for the truth is peculiarly within defendants' knowledge and control. As the senior managers and/or directors of the Company, the Individual Defendants had knowledge of the details of Coty's internal affairs.

64.     The Individual Defendants are liable both directly and indirectly for the wrongs complained of herein. Because of their positions of control and authority, the Individual Defendants were able to and did, directly or indirectly, control the content of the statements of the Company. As officers and/or directors of a publicly-held company, the Individual Defendants had a duty to disseminate timely, accurate, and truthful information with respect to Coty's businesses, operations, future financial condition and future prospects. As a result of the dissemination of the aforementioned false and misleading reports, releases and public statements, the market price of Coty's common stock was artificially inflated throughout the Class Period. In ignorance of the adverse facts concerning the Company which were concealed by Defendants, Plaintiff and the other members of the Class purchased or otherwise acquired Coty's common stock at artificially inflated prices and relied upon the price of the common stock, the integrity of the market for the common stock and/or upon statements disseminated by Defendants, and were damaged thereby.

65.     During the Class Period, Coty's common stock was traded on an active and efficient market. Plaintiff and the other members of the Class, relying on the materially false and misleading statements described herein, which the defendants made, issued or caused to be disseminated, or relying upon the integrity of the market, purchased or otherwise acquired shares of Coty's common stock at prices artificially inflated by defendants' wrongful conduct. Had Plaintiff and the other

members of the Class known the truth, they would not have purchased or otherwise acquired said common stock, or would not have purchased or otherwise acquired them at the inflated prices that were paid. At the time of the purchases and/or acquisitions by Plaintiff and the Class, the true value of Coty's common stock was substantially lower than the prices paid by Plaintiff and the other members of the Class. The market price of Coty's common stock declined sharply upon public disclosure of the facts alleged herein to the injury of Plaintiff and Class members.

66.    By reason of the conduct alleged herein, Defendants knowingly or recklessly, directly or indirectly, have violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

67.    As a direct and proximate result of defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their respective purchases, acquisitions and sales of the Company's common stock during the Class Period, upon the disclosure that the Company had been disseminating misrepresented financial statements to the investing public.

## COUNT II

### *Against the Individual Defendants*

### *for Violations of Section 20(a) of the Exchange Act*

68.    Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

69.    During the Class Period, the Individual Defendants participated in the operation and management of the Company, and conducted and participated, directly and indirectly, in the conduct of the Company's business affairs. Because of their senior positions, they knew the adverse non-public information about Coty's misstatements.

30

70.     As officers and/or directors of a publicly owned company, the Individual Defendants had a duty to disseminate accurate and truthful information, and to correct promptly any public statements issued by Coty which had become materially false or misleading.

71.     Because of their positions of control and authority as senior officers, the Individual Defendants were able to, and did, control the contents of the various reports, press releases and public filings which Coty disseminated in the marketplace during the Class Period concerning the misrepresentations. Throughout the Class Period, the Individual Defendants exercised their power and authority to cause Coty to engage in the wrongful acts complained of herein. The Individual Defendants therefore, were "controlling persons" of the Company within the meaning of Section 20(a) of the Exchange Act. In this capacity, they participated in the unlawful conduct alleged which artificially inflated the market price of Coty's common stock.

72.     Each of the Individual Defendants, therefore, acted as a controlling person of the Company. By reason of their senior management positions and/or being directors of the Company, each of the Individual Defendants had the power to direct the actions of, and exercised the same to cause Coty to engage in the unlawful acts and conduct complained of herein. Each of the Individual Defendants exercised control over the general operations of the Company and possessed the power to control the specific activities which comprise the primary violations about which Plaintiff and the other members of the Class complain.

73.     By reason of the above conduct, the Individual Defendants and/or Coty are liable pursuant to Section 20(a) of the Exchange Act for the violations committed by the Company.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff demand judgment against defendants as follows:

A.      Determining that the instant action may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure, and certifying Plaintiff as the Class representatives;

B.      Requiring Defendants to pay damages sustained by Plaintiff and the Class by reason of the acts and transactions alleged herein;

C.      Awarding Plaintiff and the other members of the Class pre-judgment and post-judgment interest, as well as their reasonable attorneys' fees, expert fees and other costs; and

D.      Awarding such other and further relief as this Court may deem just and proper.

## DEMAND FOR TRIAL BY JURY

Plaintiff hereby demands a trial by jury.

Dated: March 23, 2026

Respectfully submitted,
**LEVI & KORSINSKY LLP**

*/s/ Adam M. Apton*
Adam M. Apton
33 Whitehall Street, 27th Floor
New York, New York 10004
Tel.: (212) 363-7500
Fax: (212) 363-7171
Email: aapton@zlk.com

*Attorneys for Plaintiff Suvega Srinivasan*